BURCH *v.* STRINGHAM.

1. FRAUD—CANCELLATION OF INSTRUMENTS—CHATTEL MORTGAGES—EVIDENCE—SUFFICIENCY.

In proceedings to enjoin defendant from disposing of a note and chattel mortgage given for a half interest in a livery business, and for the cancellation of the same on the ground of fraud in said sale, the finding of the court below that plaintiff had failed to establish fraud, *held*, sustained by the record.

2. SAME—REPRESENTATIONS AS TO EARNINGS—FALSITY.

Representations of defendant that if plaintiff would give his time to the business he could make $1,000 a year over and above his expenses, *held*, fairly construed, to mean that plaintiff could make $1,000 a year over and

above the expenses of the business, not including his living expenses.

3. SAME—FUTURE EARNINGS—EXPRESSION OF OPINION—FALSITY.
   Where plaintiff did not give the business his personal attention, but hired a man in his place, who was paid out of the business at the rate of $780 a year, even if defendant's statement as to future earnings amounted to something more than a mere expression of opinion, plaintiff must fail because he has failed to show that the statement was untrue.

Appeal from Calhoun; North (Walter H.), J. Submitted January 22, 1920. (Docket No. 14.) Decided April 10, 1920.

Bill by Elmer U. Burch against George E. Stringham to enjoin the collection of a note and mortgage, and to set aside a sale on the ground of fraud. From a decree dismissing the bill, plaintiff appeals. Affirmed.

*James M. Powers,* for plaintiff.

*Joseph L. Hooper,* for defendant.

BIRD, J. In June, 1918, plaintiff was a tenant on a farm a few miles distant from the city of Battle Creek. Defendant was engaged in the livery business in Battle Creek. On June 4th plaintiff, after some negotiations, purchased a one-half interest in the livery business of defendant for $750, and gave him a chattel mortgage thereon, also on his horses, live stock and farming implements for $975, to secure the purchase price, and included therein $225 which defendant was to pay in taking up an existing mortgage then on the property, and which he afterwards paid. At the time the trade was made it was agreed that plaintiff should remain on the farm and finish up his year's work, and defendant should manage the livery business with the

210—Mich.—4.

help of one man, who should be paid by plaintiff. It was also agreed that defendant should make and deliver to plaintiff a monthly statement of the business transacted. In the latter part of December plaintiff began to give some attention to the business and books of account. He requested defendant to let him have $25 on account of profits. Defendant replied that there were no profits; that after deducting $15 a week for the man employed and paying for feed, there was nothing left. Plaintiff claims that it was then that he discovered that he had been defrauded. Being unable to adjust his differences with defendant, he filed this bill praying for a temporary injunction to restrain defendant from disposing of the note and chattel mortgage, also that the note and chattel mortgage be canceled upon payment to defendant of the $225 which he advanced to pay the existing mortgage.

Plaintiff's claim is that defendant represented to him that he could make $1,000 a year above expenses by giving his attention to the business, and that, as a further inducement for him to purchase, he promised him that, in the event matters were not just as he represented, he would take back the livery stock and refund to him all that he had paid therefor.

At the hearing several witnesses were sworn, the principal ones being plaintiff and his wife and the defendant. At the conclusion of the case the chancellor reviewed the claims of the parties and the testimony and announced that in his judgment plaintiff had failed to establish the fraud which was alleged in the bill, and therefore dismissed the same.

It appears that the deal was first talked over by plaintiff's wife and defendant. It was her habit when she drove to the city to keep her horses in defendant's barn. In so doing she became acquainted with him. She was very anxious to get off from the farm and move to the city, and she so indicated to defendant,

whereupon he suggested a sale of a half interest in his business to plaintiff. Mrs. Burch stated that plaintiff had formerly been in the employ of the Advance Pump Company and earned from $22 to $25 a week. She testified that defendant replied:

"A man that takes care of this business, a half interest here, I will guarantee that he can make more than that. He will make between $25 and $30 a week, if he takes care of it."

And that defendant further said:

"I will tell you what I will do with you. If your husband buys a half interest in this business and if he does not make exactly what I said he will, and if he is dissatisfied in any way, shape or manner, I am buying it back and I will pay him every dollar he puts into it."

Defendant requested Mrs. Burch to inform her husband of his offer and she testified that she did so. Mr. Burch testified in part, as follows:

"In one of the conversations that I had with him he told me he had been earning $1,000 a year over and above his expenses. If I entered a partnership with him at this time I expected, of course, to divide the profits with him, over and above living expenses. I did not talk with him about what his living expenses were."

He further testified that:

"I asked him if he was sure if there could be a living made in it. He says, 'if this thing is not as I represent it to you, and you do not make good, and you do not make a good living and pay $1,000 a year above all expenses, I will take this back and pay every dollar that you have put into it. I am taking the risk.'"

Plaintiff appears to assume in his testimony, and his counsel argues, that the representation was made that he could make $1,000 a year over and above his living expenses. Taking plaintiff's own version of the

language used we do not think it will admit of this interpretation. This statement was that he could make $1,000 over and above his expenses. This fairly construed would mean that he could make $1,000 a year over and above the expenses of the business. The talk between defendant and plaintiff's wife indicates that this was what was meant by the defendant.

Assuming this is what defendant intended, does it sufficiently appear that the business would not do what was represented by defendant it would do? It is true the books did not show at the end of six months that anything by way of profits was coming to plaintiff, but it must be remembered in this connection that during the six months plaintiff had given no time to the business, and was obliged to pay at the rate of $780 a year for a man to take his place. This man was paid and his wages were charged to plaintiff. Had plaintiff been in a position to give the time and attention to the business that one usually does to his own, he would have had what was paid the hired man and doubtless would have increased the business to some extent. Before plaintiff is entitled to ask equitable relief on the ground of defendant's promise to take the property back and refund the purchase price if it did not yield what he represented it would, he should make some effort to demonstrate by actual trial that defendant's representations in that regard were untrue.

The fraud complained of was not that the property was worth very much less than was represented, but the fraud relied upon was in connection with defendant's statement as to the amount of business he, plaintiff, could do. This statement was concerning a future fact and not a past or present one. But even if it could be said that the statement amounted to something more than a mere expression of opinion we think plaintiff must fail because the record fails to

convince us that the statement was untrue. For the reasons given, we are inclined to agree with the chancellor that plaintiff is not entitled to the relief which he seeks.

The decree of the lower court will be affirmed, with costs to the defendant.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, STONE, CLARK, and SHARPE, JJ., concurred.